Filed 8/2/24  P. v. Depew CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C099234 |
| Plaintiff and Respondent, | (Super. Ct. No. STK-CR-SB384-2022-0008572) |
| v. | |
| DAVID DEPEW, | |
| Defendant and Appellant. | |

David Depew appeals from the trial court's order denying his petition for termination from the sex offender registry.  He argues the People failed to meet their burden of proving community safety would be significantly enhanced by requiring his continued registration and the trial court abused its discretion in concluding otherwise.  We agree and thus reverse.

**LEGAL BACKGROUND**

We begin with some legal background in order to set the stage for the factual and procedural background discussed in the next section.

1

Penal Code section 290 requires those convicted of enumerated sex crimes to register as sex offenders while they live, work, or attend school in California. (Pen. Code, § 290, subds. (b), (c).)[1] Its purpose " 'is to assure that persons convicted of the crimes enumerated therein shall be readily available for police surveillance at all times because the Legislature deemed them likely to commit similar offenses in the future.' " (*Wright v. Superior Court* (1997) 15 Cal.4th 521, 527.) Until recently, the obligation to register was lifelong regardless of the crime for which the person was convicted. (*Ibid*.; see also former § 290, subd. (b).) "Over time, this one-size-fits-all approach led to California having 'the largest number of registrants in the nation,' 'mak[ing] it difficult for law enforcement to effectively supervise those who present[ed] the greatest public danger.' " (*People v. Franco* (2024) 99 Cal.App.5th 184, 190.) "In order to reduce the burden on this overwhelmed system and thereby free up law enforcement to supervise the sex offenders who pose the greatest risk to the community," the Legislature recently amended section 290 to establish "a three-tiered system, with offenders in each tier presumptively obligated to register for different periods of time depending on the degree of risk they pose to the community." (*Franco*, at p. 190; see also § 290, subd. (d).) Offenders in tier one must register for a minimum of 10 years; offenders in tier two must register for a minimum of 20 years; and offenders in tier three must continue to register for life. (§ 290, subd. (d); *People v. Manzoor* (2023) 95 Cal.App.5th 548, 554.) Placement in a particular tier is generally based on the crime for which the offender was convicted. (See § 290, subd. (d).)

Section 290.5 contains procedures for tier one and tier two offenders to seek termination from the sex offender registry once they have completed their mandated minimum registration period. (§ 290.5, subd. (a)(1).) The procedures begin by filing a

---

[1]     Undesignated statutory references are to the Penal Code.

petition for termination and serving it on the district attorney. (*Id.*, subd. (a)(1), (2).) The district attorney "may . . . request a hearing on the petition if . . . community safety would be significantly enhanced by the person's continued registration." (*Id.*, subd. (a)(2).) If no hearing is requested, the court "*shall*" grant the petition so long as the petitioner is currently registered, has no pending charges that could extend his or her registration period, and is not in custody or on parole, probation, or supervised release. (*Ibid.*, italics added.)

If a hearing is requested, "the district attorney shall be entitled to present evidence regarding whether community safety would be significantly enhanced by requiring continued registration." (§ 290.5, subd. (a)(3).) In ruling on the petition, the court "shall consider" the following seven factors: "[1] the nature and facts of the registerable offense; [2] the age and number of victims; [3] whether any victim was a stranger at the time of the offense (known to the offender for less than 24 hours); [4] criminal and relevant noncriminal behavior before and after conviction for the registerable offense; [5] the time period during which the person has not reoffended; [6] successful completion, if any, of a Sex Offender Management Board-certified sex offender treatment program; and [7] the person's current risk of sexual or violent reoffense, including the person's risk levels on SARATSO static, dynamic, and violence risk assessment instruments, if available." (*Ibid.*) The court may base its determination on "declarations, affidavits, police reports, or any other evidence submitted by the parties which is reliable, material, and relevant." (*Ibid.*) If the court denies the petition, it "shall set the time period after which the person can repetition for termination, which shall be at least one year from the date of the denial, but not to exceed five years." (*Id.*, subd. (a)(4).)

In *People v. Thai* (2023) 90 Cal.App.5th 427 (*Thai*), the court held that when the People request a hearing on a petition, it is their burden to produce evidence and to show "that requiring continued registration appreciably increased society's safety" (*id.* at p. 432) because the petitioner "was *currently* likely to reoffend" (*id.* at p. 433). In other

words, it is the People's burden to demonstrate the petitioner is currently likely to reoffend; it is not the petitioner's burden to establish he or she is not currently likely to reoffend. And in *People v. Franco, supra*, 99 Cal.App.5th at page 192, the court held the trial court's task when ruling on a petition "is to assess whether the People have carried their burden."

With this legal background in mind, we turn to the factual and procedural background.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1992, following a jury trial, Depew was convicted of four counts of lewd acts with a child under the age of 14, in violation of section 288, subdivision (a). He was sentenced to six years in prison, was released in 1995, and has registered as a sex offender since his release.[2]

A violation of section 288, subdivision (a) is a tier two offense, and Depew was thus required to register for a minimum of 20 years. (§ 290, subd. (d)(2), (3).) In August

---

[2] We note the record contains no evidence about the underlying conviction, and the only information we have about the conviction comes from the parties' briefs, both here and in the trial court. "Statements by an attorney, whether made in court or in a brief, are not evidence." (*Muskan Food & Fuel, Inc. v. City of Fresno* (2021) 69 Cal.App.5th 372, 389.) The parties agree, however, that Depew was convicted in 1992 of four counts of violating section 288, subdivision (a).

The People acknowledge the record contains no evidence about the conviction and they ask us to judicially notice our unpublished opinion upholding the conviction because — they claim — it contains relevant information about "[t]he nature of the convictions and the evidence adduced at trial." We deny the request because, as the People also acknowledge, "It is unknown whether the appellate opinion was before the [trial] court when it considered Depew's motion." The question in this case is whether the People met their burden, and they cannot meet their burden with evidence that was not submitted to the trial court. Moreover, as we explain in more detail below, our unpublished opinion upholding Depew's underlying conviction is simply more of the same type of evidence that case law teaches is insufficient to establish community safety would be significantly enhanced by requiring Depew to continue registering as a sex offender.

4

2022, after having registered for well over 20 years, Depew filed a petition for termination from the sex offender registry. The district attorney opposed the petition on the ground community safety would be significantly enhanced by Depew's continued registration. No evidence was attached to the initial opposition. After a hearing on the petition was scheduled, the district attorney filed a lengthier opposition and attached two exhibits thereto.

The first exhibit consisted of police reports from 1990 and 1991 regarding the underlying sex offenses. According to the reports, the victim, who was Depew's niece, stated Depew had touched her inappropriately at least 20 times in and around 1984, when she was seven or eight years old. She stated she would awake to find Depew in her bed, and he would put his hands in her panties and touch her buttocks and vaginal area. The touching stopped in the winter of 1984, when Depew moved out of the house, but it resumed in mid-1988, when Depew moved into an apartment with the victim (who would have been around 12 years old) and her mother.[3] The victim stated she would wake up to find Depew's hands down her pants with his finger inside her private parts. One time, Depew woke the victim up, pulled her pants down, and put his face between her legs and his tongue inside her private parts. She tried to kick him away and started crying and telling him to stop, but he held her down and continued. She stated Depew performed oral sex on her four to five other times. By November 1988, Depew was touching her almost nightly, and the touching did not stop until he moved out of the apartment in December 1988.

The victim also stated Depew had given her a letter, and she gave a copy to police. This letter, which was the second exhibit attached to the opposition, is addressed "to my love," and states (among other things), "the sex was not dirty it was the way to show you

---

[3]     Depew would have been around 25 in 1984, and around 29 in 1988.

that I love you verry much even if you were asleep but you did not act like it you said we wood be like wife and husbin for ever because you like the way I made love to you. You are not a virgin inney more."

When police interviewed Depew, he denied touching the victim. He was shown a copy of the letter and he admitted he had written some parts of it but denied writing other (more incriminating) parts. The police had Depew provide a handwriting sample, and they noted in their report that the handwriting sample and the letter contained many of the same spelling errors (including "verry" and "inney").

After summarizing the police reports, the district attorney argued community safety would be significantly enhanced by requiring continued registration due to the facts and nature of the underlying offense and the age of the victim. He also argued Depew never showed remorse or accepted responsibility for his actions, as evidenced by the fact that he denied committing the crimes when interviewed by the police, and set the matter for a jury trial, which "raise[d] his risk of re-offense because he lacks insight into the drivers of his sexual crimes." Finally, the district attorney noted Depew was convicted in 2014 for "PC 368(d); PC 664/368(d) (felony)."[4] No other information or documentation about the 2014 conviction is provided.

Depew filed a reply acknowledging he was convicted in 2014 of "theft from an elder," and stating he was granted, and successfully completed, probation. He also argued there was no evidence showing he was currently a danger to the community, noting that over 30 years had passed since the underlying sex offenses, he has registered as a sex offender since his release from custody in 1995, and he has not engaged in any sex offenses or violent crimes in the 28 years since his release.

---

[4]     Section 368, subdivision (d), specifies the punishment for theft, embezzlement, forgery, or fraud where the victim is an elder or dependent adult, and section 664 specifies the punishment for an unsuccessful attempt to commit a crime.

In March 2023, the trial court ordered the probation department to prepare a Static-99R report on Depew.[5]  Although the record does not include a copy of the report, Depew filed a supplemental brief stating he "received the lowest possible score of 0, indicating a below average risk of reoffending," and the trial court acknowledged this at the hearing.

A short hearing on the petition was held on August 14, 2023.  The trial court stated it was ready to rule unless anyone had anything else to add.  Depew's counsel stated she had nothing to add, and she reiterated Depew's "conviction is 28 years old.  He has no record, no failures to register, and he scored a zero on a Stat-99."  The district attorney stated he would submit on the papers.

After noting "the *Thai* case" had recently been decided,[6] the trial court denied the petition and explained its reasons as follows.  It noted the underlying conviction "was [in] 1992, and he did his time," and it stated it would not go over the facts of the case other than to note "[i]t was his niece who was seven or eight years old."  It then continued (in full):  "He has picked up a new felony conviction in 2014 and with a victim who is in a vulnerable population, which is the elders.  So he got a 2014 conviction of theft from an elder.  That makes him different than Mr. Thai in my opinion.  I know that he has not attended a sex offender treatment program, but we didn't have any when he got

---

[5]    The Static-99R is a tool used to assess a sex offender's risk of reoffense based on a number of static (i.e., unchanging) factors, including number of sex offenses, sentencing dates, convictions for nonsexual violence, the offender's age, and whether any sex offenses were committed against unrelated victims or strangers.  (See *People v. Johnson* (2020) 45 Cal.App.5th 379, 387.)

[6]    *Thai, supra*, 90 Cal.App.5th 427, which we discuss below, was the first published decision to consider a challenge to the denial of a petition for termination from the registry based on the trial court's determination community safety would be significantly enhanced by continued registration.  It was decided in April 2023, which was after the district attorney filed an opposition to the petition, and before the hearing.

convicted. So there's that, but nothing has he done of his own volition regarding that, that might make me feel a little bit better about relieving him of the burden if I were to do it. [¶] So I think that community safety is significantly enhanced by continued registration. I think that continued registration appreciably increases society's safety based on everything I've said, and I'm not ignoring the zero on the Static-99. That's no risk. But it's the conviction in 2014 that concerns me. [¶] I know he did his probation and he successfully completed it. But he has not ever taken ownership of his actions. I have no showing of remorse, which concerns me about lack of insight and raises a risk of reoffending to me. So I would strongly encourage him to do something in those two regards that I just mentioned and I would let it be reviewed in another year instead of five years out."

Depew filed a timely notice of appeal.

## DISCUSSION

"We evaluate a trial court's decision whether to grant or deny a petition for removal from the sex offender registry for an abuse of discretion, reviewing any subsidiary factual findings based on disputed facts for substantial evidence and any subsidiary legal findings — including questions of statutory construction — de novo." (*People v. Franco, supra*, 99 Cal.App.5th at p. 192.) "A trial court abuses its discretion when its factual findings are not supported by the evidence, or its decision is based on an incorrect legal standard." (*Thai, supra*, 90 Cal.App.5th at p. 433.)

Keeping in mind that it was the People's burden to prove community safety would be significantly enhanced by requiring Depew to continue to register because he is currently likely to reoffend, we find the trial court abused its discretion in denying the petition.

This case is similar to *Thai, supra*, 90 Cal.App.5th 427. The defendant in that case masturbated a 12-year-old boy and pled guilty to committing a lewd and lascivious act on a child under the age of 14. After registering as a sex offender for the mandated

8

minimum period (20 years, as in this case), the defendant filed a petition for termination. The prosecution opposed the petition, "supported its opposition with various exhibits dating from the time of the offense," and argued the underlying offense was particularly egregious and the defendant did not appear remorseful. (*Id*. at p. 430.) In denying the petition, the trial court focused on the facts of the underlying offense and stated it weighed them " 'heavily.' " (*Id*. at p. 431.) The defendant appealed, and the appellate court reversed, holding "insufficient evidence supports the trial court's conclusion community safety would be appreciably increased by requiring Thai to continue to register for five years. The prosecution failed its burden to produce evidence establishing that terminating the registration requirement considerably raised the threat to society because 64-year-old Thai was *currently* likely to reoffend."[7] (*Thai*, at p. 433.) It noted that although the trial court stated it considered all seven factors identified in section 290.5, it focused on the circumstances of the offense, which was error. The court explained, "Assuming for purposes of argument the 1997 offense was egregious, those facts alone do not demonstrate Thai was a risk to the community over 24 years later." (*Id*. at p. 434.) "Other than evidence of the 24-year-old underlying offense, the prosecution offered no evidence Thai presents a danger today," and thus "failed to meet its burden as required by the statute. Therefore, the trial court abused its discretion by denying Thai's petition." (*Id*. at pp. 434, 435; see also *People v. Franco, supra*, 99 Cal.App.5th at p. 194 ["The trial court in this case appears to have committed the sin condemned in *Thai* — namely, despite acknowledging other factors, the court gave controlling weight to the 'egregious' nature of defendant's offenses despite 37 years of law-abiding behavior since the offenses and despite the People's failure to produce any

---

[7]     Presumably the court mentioned the defendant's age because research suggests the likelihood of sexual recidivism declines with age. (See, e.g., *People v. Jackson* (2022) 75 Cal.App.5th 1, 16, fn. 4.) We note Depew was born in 1958 and he is 65.

other evidence indicating that defendant, age 74 at the time of the hearing, 'was *currently* likely to reoffend' "].)

*Thai* thus stands for the proposition when the only evidence offered by the People concerns the underlying offense, they fail to meet their burden of demonstrating community safety would be enhanced by requiring continued registration. This case suffers from the same problem that required reversal in *Thai*. The People offered only two pieces of evidence — the police reports and the letter allegedly written by Depew to the victim — and both pieces of evidence concerned the underlying offenses, which occurred over 35 years ago. *Thai* teaches that is not sufficient to meet the People's burden of establishing Depew is *currently* likely to reoffend.

The People argue *Thai* is distinguishable because it involved a single lewd and lascivious act, while this case involved multiple lewd and lascivious acts. This is simply another way of focusing on the facts of the underlying offenses, but, to quote *Thai*, "those facts alone do not demonstrate [Depew] was a risk to the community over [35] years later." (*Thai, supra*, 90 Cal.App.5th at p. 434.)

The People also argue this case is distinguishable because the trial court did not focus solely on the nature of the underlying offense when denying the petition. They note the trial court cited Depew's 2014 conviction for theft from an elder and stated "[t]hat makes him different than Mr. Thai in my opinion" and "it's the conviction in 2014 that concerns me." The People argue this conviction distinguishes this case from *Thai* and supports the trial court's decision. The problem with this argument is that the district attorney submitted no *evidence* about this conviction. Instead, he simply included the following statement in his opposition brief: "After Petitioner's conviction in case SC050736A [the underlying sex offense case], he sustained the following convictions: [¶] . . . 06/05/2014; SF126823A; PC 368(d); PC 664/368(d) (felony)." Perhaps more importantly, even if the district attorney had submitted evidence that Depew was convicted in 2014 of theft from an elder, he submitted no information about the nature

10

and facts of the underlying crime. And with no information about the nature and facts of the underlying crime, there is simply no basis to conclude that it has some tendency in reason to prove Depew is currently likely to commit a sex offense.[8]

The People note section 290.5 provides the trial court shall consider "criminal and relevant noncriminal behavior before and after conviction for the registrable offense," and does not limit the trial court to considering only sex crimes. (§ 290.5, subd. (a)(3).) This is true, but, again, there must still be some evidentiary basis for concluding the criminal behavior at issue has some tendency in reason to prove the petitioner is currently likely to commit a sex offense. Standing alone, the district attorney's bare statement that Depew was convicted in 2014 for "PC 368(d); PC 664/368(d) (felony)," even when coupled with Depew's admission the conviction was for theft from an elder, is not sufficient to support such a conclusion.

The People also argue *Thai* is distinguishable because there was evidence of remorse in that case (the defendant told his probation officer he was " 'very sorry' " if he caused the victim emotional pain and he " 'would never do it again' " (*Thai, supra,* 90 Cal.App.5th at p. 434), while "[i]n the instant case, there was no similar evidence of remorse." The trial court appears to have agreed, because it stated, "I have no showing of remorse, which concerns me." As in *Thai*, however, the People (and the trial court) "forget[]" it was not Depew's burden to present evidence of remorse; instead, "it was the prosecution's burden to establish [Depew] was a current risk." (*Ibid*.) The People may contend the district attorney presented evidence Depew lacked remorse because the district attorney submitted police reports that showed Depew denied writing the most incriminating portions of the letter to the victim "despite the lack of discernable variation in the letter's handwriting and the fact that spelling errors in his handwriting sample were

---

[8]    As noted, section 368, subdivision (d), specifies the punishment for theft, embezzlement, forgery, or fraud where the victim is an elder (i.e., over 65).

11

consistent with errors in portions of the letter that he had denied writing." Assuming they do so contend we note only that, without more, the fact that Depew denied committing the crimes when interviewed by police in 1990 does not support a conclusion that he is currently likely to reoffend.

Finally, the People argue *Thai* is not controlling because it involved a different question. They note the trial court in *Thai* specified the defendant had to wait five years to file another petition, while in this case the trial court specified Depew had to wait just one year. The People then state the question in *Thai* was whether the trial court abused its discretion in finding community safety would be significantly enhanced by requiring the defendant to register for five more years, while in this case "the question is whether the trial court abused its discretion by requiring continued registration for a single year." We disagree with the People's characterization of the questions at issue. The question in both this case and in *Thai* is whether the People met their burden of establishing community safety would be significantly enhanced by requiring continued registration (whether for one year or five years) because the defendant is currently likely to reoffend. Here, as in *Thai*, they did not meet their burden, and here, as in *Thai*, the trial court abused its discretion in concluding otherwise.

**DISPOSITION**

The order denying Depew's petition is reversed.

/s/
_____
EARL, P. J.

We concur:


/s/
_____
MAURO, J.


/s/
_____
MESIWALA, J.